NO. 07-04-0446-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



NOVEMBER 17, 2004


______________________________



IN THE MATTER OF THE MARRIAGE OF HENRIETTA MENDOZA and RUBEN


O. MENDOZA AND IN THE INTEREST OF J. N. M. and R. A. M., CHILDREN


_________________________________



 FROM THE COUNTY COURT AT LAW NO. 1 OF LUBBOCK COUNTY;



NO. 2003-523,058; HON. LARRY B. LADD, PRESIDING


_______________________________



Order of Dismissal


_______________________________



Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

 Ruben O. Mendoza appealed from a final decree of divorce. However, he
suggested, in a letter filed pro se, that he no longer wishes to pursue the matter. By letter
dated October 7, 2004, we instructed appellant and his counsel that they should inform this
court by October 18, 2004, whether appellant wished to continue the appeal. On October
29, 2004, counsel informed the court via a telephone call that his client did not wish to do
so and that a motion to dismiss would be forthcoming. Thereafter, by letter dated
November 3, 2004, we ordered counsel and appellant to file, by November 12, 2004, either
a motion to dismiss or a writing illustrating that appellant wished to continue his appeal. 
On the possibility that appellant would inform us of his desire to prosecute the appeal, we
further directed him to show the court whether he complied with Texas Rule of Appellate
Procedure 35.3(b)(3). So too did we notify him that the failure to comply with the order
could result in the dismissal of the appeal for want of prosecution. To date, and despite our
November 3rd order, this court has received neither a motion to dismiss nor any other
response from appellant or his attorney. 

 Therefore, the appeal is dismissed for want of prosecution and the failure to comply
with an order of this court. Tex. R. App. P. 42.3. 


 Brian Quinn 

 Justice



'Arial', sans-serif">AUGUST 20, 2008

______________________________


MARIO ODILON REYNA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE


_________________________________

FROM THE 64TH DISTRICT COURT OF HALE COUNTY;

NO. A16870-0607; HONORABLE ROBERT W. KINKAID, JR., JUDGE

_______________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
MEMORANDUM OPINION
          Appellant, Mario Odilon Reyna, was convicted by a jury of driving while intoxicated,
third or more, and punishment was assessed at ninety years confinement. By two issues,
Appellant maintains (1) the trial court erred in denying his motion for mistrial because a
juror withheld her knowledge of Appellant’s family and her husband’s former relationship
to Appellant’s family, and (2) the trial court erred in denying his motion to suppress. We
affirm.
Background Facts
          On May 6, 2006, at approximately 9:30 p.m., Trooper Benito Gonzales was
transporting a prisoner to the Hale County Jail. He was traveling north along an “S” curve
on FM 789 when he observed a van blocking the “Y” intersection of FM 789 and County
Road 175. The van was parked on the west side of FM 789 directly in front of the county
road. Gonzales made a U-turn to determine if the van was disabled and in need of
assistance. He pulled up behind the van and activated the “take-down” lights on his patrol
car to illuminate the dark area. Before he could exit the vehicle, the van moved forward
about six to ten feet before coming to a stop beyond the intersection. Trooper Gonzales
approached the van and noticed Appellant in the driver’s seat hunched over and not
moving. He requested that Appellant show his hands. 
          When Appellant rolled down his window, Gonzales detected a strong odor of alcohol
and other indications of intoxication. When questioned, Appellant responded that he had
consumed only one alcoholic beverage. Gonzales observed an open alcoholic beverage
in the cup holder of the van and asked Appellant if he could open the passenger door to
check for occupants or weapons. Proceeding with Appellant’s permission, he opened the
passenger side door and noticed a small cooler between the driver’s and passenger’s
seats and opened it to reveal more alcoholic beverages. Pursuant to Gonzales’s request,
Appellant exited the van at which time Gonzales noticed a bottle of tequila in the driver’s
seat. According to Gonzales’s testimony and offense report, Appellant was confused and
disoriented and claimed he had stopped to take a nap and “wee wee.”
          Trooper Gonzales performed the horizontal gaze nystagmus field sobriety test and
observed all six clues indicating Appellant was intoxicated. Appellant was uncooperative
and verbally abusive and refused to participate in other field sobriety tests. He was
arrested for driving while intoxicated and transported to the Hale County Jail with the other
prisoner in the trooper’s patrol car. 
          We will address Appellant’s issues in a logical rather than sequential order. Thus,
we first address his contention that the trial court abused its discretion in denying his
motion to suppress. 
Motion to Suppress
          Appellant filed a motion to suppress alleging that Trooper Gonzales had no
reasonable suspicion to detain him and further alleged that the community caretaking
exception to the warrant requirement of the Fourth Amendment did not support the
trooper’s actions. At the suppression hearing, Gonzales was the only witness to testify for
the State. The substance of Gonzales’s testimony was that he believed the van was
disabled and blocking an intersection. He interrupted the transfer of his prisoner to stop
and check on the situation.
          The defense called Heath Bozeman, a transportation engineer with the Texas
Department of Transportation, in an effort to establish that Appellant was not blocking the
intersection. The defense argued that Appellant was parked on the shoulder of FM 789
and not blocking the intersection. The defense also asserted there was no evidence to
suggest that Gonzales was engaging in his community caretaking duties. 
          Pursuant to State v. Cullen, 195 S.W.3d 696, 699-700 (Tex.Crim.App. 2006),
Appellant requested, and the trial court made, findings of fact and conclusions of law. As
relevant here, the trial court made the following findings of fact:
3. while traveling on Texas FM 789 Trooper Gonzales observed a blue
passenger van parked in the intersection of Texas FM 789 and County Road
175;
* * *
5. Trooper Gonzales observed the blue passenger van to be blocking the
intersection of Texas FM 789 and County Road 175; and
6. the blue passenger van was parked in a position in the intersection where
vehicles entering County Road 175 from FM 789 or exiting County Road 175
into FM 789 would collide with the blue passenger van. 
 
          The trial court made one conclusion of law as follows:
 
[t]he defendant was lawfully stopped by Trooper Gonzales because the
defendant violated Texas Transportation Code Section 545.302. Section
545.302 states that an operator may not stop, stand, or park a vehicle in an
intersection. The blue van operated by the defendant was parked in the
intersection of Texas FM 789 and County Road 175 when observed by
Trooper Gonzales. The location of the van, where parked, would have
caused vehicles entering or exiting the two roadways through the intersection
to collide with the van.
 
          I. Standard of Review 
          A trial court’s ruling on a motion to suppress is reviewed for abuse of discretion. 
Balentine v. State, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). In determining whether the
trial court abused its discretion we accord almost total deference to a trial court’s
determination of the historical facts especially if those determinations turn on witnesses’
credibility and demeanor. Neal v. State, No. AP-75406, 2008 WL 2437667, at *11
(Tex.Crim.App. June 18, 2008). We review the court’s application of the law to the facts
de novo. See Amador v. State, 221 S.W.3d 666, 673 (Tex.Crim.App 2007); Carmouche
v. State, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); Guzman v. State, 955 S.W.2d 85, 88-89 (Tex.Crim.App. 1997). We do not engage in our own factual review; rather, the trial
court is the sole judge of the credibility of the witnesses and the weight to be given their
testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). Where, as here, the
trial court makes explicit findings of fact, we determine whether the evidence, when viewed
in the light most favorable to the trial court’s ruling, supports those findings. See State v.
Kelly, 204 S.W.3d 808, 818-19 (Tex.Crim.App. 2006). The decision of the trial court will
be sustained if it is correct on any theory of law applicable to the facts of that case. Ross,
32 S.W.3d at 856. 
          At a hearing on a motion to suppress, the defendant bears the initial burden of
producing evidence that rebuts the presumption of proper police conduct. Ford v. State,
159 S.W.3d 488, 492 (Tex.Crim.App. 2005). Once the defendant satisfies this burden by
establishing that a search or seizure occurred without a warrant, the burden shifts to the
State to establish that the search or seizure was conducted pursuant to a warrant or was
reasonable. Bishop v. State, 85 S.W.3d 819, 822 (Tex.Crim.App. 2002). 
          A. Traffic Violation
          It is a violation of the Texas Transportation Code for an operator to stop, stand, or
park a vehicle in an intersection. Tex. Transp. Code Ann. § 545.302(a)(3) (Vernon Supp.
2007). A traffic violation committed in an officer’s presence authorizes an initial stop. See
Armitage v. State, 637 S.W.2d 936, 939 (Tex. 1982). The decision to stop a vehicle is
reasonable where law enforcement has probable cause to believe that a traffic violation 
has occurred. Walter v. State, 28 S.W.3d 538, 542 (Tex.Crim.App. 2000), citing Whren
v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Proof that
an offense was actually committed is not a requisite of an investigative detention as long
as the officer reasonably believed that a violation was in progress. Drago v. State, 553
S.W.2d 375, 377 (Tex.Crim.App. 1977).
          B. Discussion
          The crux of Appellant’s defense and one of his arguments on appeal is that the
State failed to prove the existence of an intersection where his van was stopped. Appellant
insists he was parked on the shoulder of FM 789. According to exhibits introduced into
evidence, FM 789 runs north and south and merges on the west side of an “S” curve with
County Road 175 to form a “Y” intersection.


 
          Traffic engineer Bozeman testified that, as defined by the Texas Department of
Transportation, an intersection is the general area where two or more roadways intersect
or merge. Bozeman was not familiar with the intersection nor had he seen photographs
of the location. Instead, his testimony was aided by a February 1, 1955 right-of-way map. 
He also pointed out to defense counsel, “I think you’re trying to make the intersection as
a hard-to-find area, and it is not. It’s the general area.”
          Trooper Gonzales testified numerous times that Appellant’s van was blocking the
intersection of County Road 175 and FM 789. Although the van was never physically on
FM 789, it nevertheless blocked the entrance to County Road 175. He further testified that
he was justified in detaining Appellant because he was in violation of § 545.302(a)(3) of
the Transportation Code for which a citation may issue. We conclude that Trooper
Gonzales’s conduct was reasonable. 
          It is of no consequence that Appellant’s van moved forward and away from the
intersection after Gonzales activated his patrol car lights. Section 545.302(a)(3) does not
prescribe a minimum time the vehicle must be stopped in the intersection for the act to
constitute an offense. When viewed in the light most favorable to the trial court’s ruling,
the findings of fact and conclusion of law are supported by the evidence.
          Appellant also complains that the trial court’s ruling on his motion to suppress
cannot be sustained under the community caretaking exception to the warrant requirement
of the Fourth Amendment because there is no evidence to support Trooper Gonzales’s
actions. If the trial court’s ruling on a motion to suppress is correct on any theory of law
applicable to the case, the decision will be sustained. Ross, 32 S.W.3d at 855-56. Having
upheld the trial court’s ruling because Appellant committed a traffic violation in Gonzales’s
presence thereby justifying Gonzales’s actions, we need not address Appellant’s
community caretaking argument. We conclude the trial court did not abuse its discretion
in denying Appellant’s Motion to Suppress. Issue two is overruled.
Motion for Mistrial
          By his first issue, Appellant maintains the trial court erred in denying his motion for
mistrial because a juror withheld her knowledge of Appellant’s family and her husband’s
former relationship to Appellant’s family. We disagree. 
          I. Standard of Review
          We review a trial court’s ruling on a motion for mistrial for abuse of discretion. See
Webb v. State, 232 S.W.3d 109, 112 (Tex.Crim.App. 2007). We view the evidence in the
light most favorable to the trial court’s ruling and uphold the ruling if it was within the zone
of reasonable disagreement. Wead v. State, 129 S.W.3d 126, 129 (Tex.Crim.App. 2004). 
A trial court abuses its discretion in denying a motion for mistrial only when no reasonable
view of the record could support the ruling. Webb v. State, 232 S.W.3d 109, 112
(Tex.Crim.App. 2007). 
          A. Discussion
          In the case at bar, after the receipt of the jury’s verdict at the guilt/innocence stage,
but prior to commencement of the punishment phase, defense counsel informed the trial
court that Appellant’s mother and stepfather recognized Juror Farias as an ex-relative of
Appellant’s family and that there had been “tremendous acrimony over child custody stuff.” 
Appellant moved for a mistrial on that basis, whereupon the following colloquy occurred
between the trial court and Juror Farias:
          Court: And Ms. Farias, do you know the Defendant in this case?

 
Juror: No, I don’t know him.

 
Court: And do you know if you have ever, in the past, ever been related to
him or any members of his family that you know of?

 
Juror: I did know them, but when I looked, his parents lived across the street
from me and then I realized that my husband was married to, I guess, his
sister, at one time, but I don’t know him.

 
Court: So whenever we conducted the voir dire examination you didn’t know
that connection, or anything like that?

 
Juror: I didn’t know that connection until I saw his parents and then I thought,
well, the name clicked, and I thought well I wonder if that’s the same person,
but I don’t know him.

 
Court: And the fact that you realized, I guess, during the trial that these
people sitting in the Courtroom were living across the street from you at one
point in time; did that affect your ability to be fair and impartial in the case
and [j]udge the evidence?

 
Juror: No, I don’t believe it does.

 
Court: And it is yes or no.

 
Juror: No, it doesn’t.

 
Court: It did not affect your ability in deciding the facts of this case?

 
Juror: No.


          Thereafter the trial court ruled that, based on the evidence before it, the motion for
mistrial was denied. The trial court then inquired if the parties were ready to proceed to the
punishment phase. The State announced it was ready and defense counsel requested a
recess to discuss what had occurred. Following a short recess, the trial proceeded to the
punishment phase. Defense counsel never requested permission to question Juror Farias
regarding her relationship with Appellant’s family or any potential bias in that regard, nor
did he object to her qualifications or further service as a juror. 
          The State contends that Appellant has not preserved his contention for appellate
review. We agree. In Franklin v. State, 12 S.W.3d 473, 477 (Tex.Crim.App. 2000)
(Franklin I), a juror revealed for the first time during trial that she knew the complainant. 
The trial court denied defense counsel’s request to question that juror about the nature of
her relationship with the victim, how long it had lasted, whether or not she could set aside
any of her relationship with the victim in sitting in judgment, or whether she would tend to
give more or less credence to the victim’s testimony and truthfulness given their
relationship. The court of appeals determined that the trial court had erred in refusing to
permit questioning of the juror to develop the nature of the relationship, but held that
because counsel did not specifically request to make a separate bill of exception for
purposes of appeal, the error was waived. Citing Nunfio v. State, 808 S.W.2d 482, 484
(Tex.Crim.App. 1991), overruled on other grounds, 994 S.W.2d 170, 171 (Tex.Crim.App.
1999), the Court of Criminal Appeals disagreed. Noting that once the trial court was on
notice of defense counsel’s proposed questions, they found that the refusal to permit the
request amounted to a direct order not to ask those questions. The Court then concluded
that the appellant had obtained a ruling and properly preserved the complaint for review. 
Franklin I, 12 S.W.3d at 477. 
          In the case at bar, after the trial court ruled adversely to Appellant on his motion for
mistrial, defense counsel made no effort to question Juror Farias about the nature of her
relationship with Appellant’s family to determine potential bias and provide a basis for
appellate review. Furthermore, Appellant never sought to make a separate record as a bill
of exception for appellate purposes, nor did he object to Juror Farias’s continued service
as a juror. Thus, we conclude under the rationale of Franklin I, Appellant failed to preserve
the denial of his motion for mistrial for appellate review.
          Assuming, arguendo, that error was preserved and that the information withheld by
Juror Farias was material, we are convinced, beyond a reasonable doubt, that Appellant
was not denied his constitutional right to trial before an impartial jury. See Tex. R. App. P.
44.2(a). See also Franklin v. State, 138 S.W.3d 351, 354 (Tex.Crim.App. 2004) (Franklin
II); Sypert v. State, 196 S.W.3d 896, 902-03 (Tex.App.–Texarkana 2006, pet. ref’d). 
Materiality is determined by evaluating whether the withheld information would likely reveal
the juror harbored a bias or prejudice to such a degree that the juror should have been
excused from jury service. Sypert, 196 S.W.3d at 900. Mere familiarity is not necessarily
material information. Franklin I, 12 S.W.3d at 478, citing Decker v. State, 717 S.W.2d 903,
907 (Tex.Crim.App. 1983). 
          Juror Farias was unaware during voir dire of a potential relationship with Appellant’s
family. She did not know Appellant and recognized his parents only after trial had
commenced. She then realized her husband had been married to Appellant’s sister at one
time. The trial court questioned her on her ability to be fair and impartial, to which she
responded affirmatively. Additionally, where, as here, bias or prejudice was not
established as a matter of law, the trial court had discretion to determine whether bias or
prejudice actually existed to such a degree that Juror Farias was disqualified and should
have been excused from jury service. See Anderson v. State, 633 S.W.2d 851, 853-54
(Tex.Crim.App. [Panel Op.] 1982). After questioning Juror Farias concerning her
knowledge of or relationship to other members of Appellant’s family, whether or not she
could be fair and impartial, and whether her ability to decide the facts would be affected
by that knowledge or former relationship, the trial court concluded that she was qualified
to continue to serve as a juror. This, the trial court had discretion to do. Issue one is
overruled. 
Conclusion
          Having overruled both of Appellant’s issues, the trial court’s judgment is affirmed.




                                                                           Patrick A. Pirtle

                                                                                 Justice







Do not publish.